IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Clarence Heatley,   )
   MOVANT,   )
  -vs-   )   Case No.: S11-96-CR-515(SS)
THE UNITED STATES OF AMERICA,   )
   RESPONDENTS.   )

**15CV 9534**

MOTION FOR LEAVE OF COURT TO
SUBMIT A SUPPLEMENTAL CLAIM TO HIS 28 U.S.C. 2255 MOTION
PURSUANT TO Fed. R. Civ. Proc. Rule 15(D)

May it please this Honorable Court:

The MOVANT, Clarence Heatly, respectfully submits this MOTION requesting Leave of Court to Submit a Supplemental Claim for 28 U.S.C. 2255 Relief pursuant to Rule 15(d) of the Federal Rules of Civil Procedure.

In support of the foregoing MOTION, the MOVANT submits the following claims:[1]

ISSUE NO. 7

The Movant contends herein that his plea, conviction and sentence was obtained as a result of his being denied Due Process of the Law. Below, the Movant will identify for this Honorable Court how this resulting denial of Due Process of Law occured.

DISCUSSION

Upon being taken into custody, the Movant avers that shortly thereafter he was not read his MIRANDA rights and Government agents and Government attorneys made moves to have Exparte communications with him before he could waive his right to an attorney. The Movant's attorney at the time, Andrew H. Schapiro was aware that Exparte meetings had been held between the Government and the Movant, which counsel for the Movant failed to bring this matter to the Court's attention, object or move to suppress any

---

[1] The foregoing motion should be construed as issue No. (7) of the initially filed 28 U.S.C. 2255 MOTION before the Court.

EXHIBIT "A"

evidence or information that was obtained by the Government as a result of the illegal Exparte communications. Attorney Schapiro continuously advised the Movant to cooperate with the Government and to plead guilty. Attorney Schapiro completely abandoned any possibilities of going to trial, as the Movant wanted because he declined to discuss that the Government claimed the Movant signed on his own free will. Attorney Schapiro never asked the Court to conduct a waiver hearing. Mr. Schapiro never filed any pre-trial motions regarding the Exparte Communications or any other matters regarding the case. Thereafter, when he was relieved from the case, Lead Attorney for the Movant, Joel Cohen, who was aware of the Exparte Communications of both the Government and the Movant and of the Government and the Court,[2] never filed any Discovery Motions to have the Government or the Court turn over, pursuant to the BRADY Rule or Jencks Act; materials in regard to the Exparte Communications the Government and Judge Sotomeyer had. The Movant was denied his MIRANDA rights due to the Exparte Communications the Government had with him upon his arrest, knowing that his Right to Counsel had attached. The Movant was denied the Effective Assistance of Counsel when the Government initiated Exparte Contacts with him without first conferring with or getting the consent from his defense counsel. Attorney David A. Ruhnke also deprived the Movant of the Effective Assistance of Counsel by failing to do anything about the Exparte contacts.

The various conflicts of interest that the Movant and his attorneys had that the Court failed to inquire into, all were instrumental in the Movant's being denied the Effective Assistance of Counsel. The Movant was overall

---

[2] Judge Sotomoyer and the Government had Exparte communications regarding information concerning the case obtained from the State prosecutors which was stated on the record. Counsel failed to object to this error and subordinated the violation of Movant's Sixth Amendment right in this Regard. ACCORD, YOHN V. LOVE 67 F. 3d 508 (3rd Cir. 1996).

denied Due Process of Law, in that he was denied the protection that the Fifth, Sixth and Fourteenth Amendments to the United States Constitution guarantee. (i.e., the Due Process of Law, the Effective Assistence of Counsel, and the Equal Protections of the Law that ALL defendants are entitled to) For example, the right to be free from illegal Government intrusion into the Attorney/Client relationship, the Right to a Trial Advocate, as defined by the Supreme Court in STRICKLAND V. WASHINGTON, 80 L. ed. 2d 690, 699 (1984); and the Right to have an Impartial Judge monitor the proceeding with an eye and interest towards protecting the government's interest to prosecute and to protect the Defendant's constitutional rights. The Movant submits the following legal arguments in support of his contentions.

### ARGUMENT

This claim must be reviewed under the Supreme Court's decision in WEATHERFORD v. BURSEY, 51 L. Ed. 2d 30 (1977), in regards to the Exparte Communications the Government had with the Movant upon his arrest. This arrest was a post-indictment arrest and under, MASSIAH V. U.S., 12 L. Ed. 2d 246 (1964), the Right to Counsel had attached and under, MASSIAH, the Exparte Communications were illegal.

The Government purposely intruded on the Attorney/Client relationship and information and evidence was obtained as a result of these Exparte contacts that were subsequently used to compel the him to plead guilty and was used to sentence him. Under the "CITIZENS PROTECTION ACT OF 1998" H.R. 3396, the conduct of the Government was illegal. Also, prior to the enactment of the "Citizens Protecttion Act. of 1998", the Government attorneys all across the United states consistently had illegal Exparte Communications with Defendants whose Attorney/Client privilege and right had been legally attached. During the time the Government violated the Movant's rights in this regard, they intentionally intruded into and upon Movant's Right to Counsel. Accord, U.S. V. SCHWINNSIE, 924 F.2d 443-47 (2nd Cir. 1991). Counsel [All of them involved in the case] denied the Movant his Right to Due Process of the Law and the Effective

-3-

Assistence of Counsel because they all failed to act as the Trial Advocates as ionvisioned by the Sixth Amendment.[3] The attorneys all failed to object to or challenge the Government's intrution into the Movant's Right to Counsel, knowing that they had not given permission for the Government to do so through Exparte contacts. The Lead attorney and other ones told the Movant to just plead guilty. Also, while he was under the oppressive, coercive, and mentally debilitating conditions of being confined, segregated and locked away from family and contact from people. . . when the attorneys told the Movant that the only way to get from under those condistions was to plead guilty and answer yes to all questions asked by the Judge when asked if this was a knowing and intelligent plea. The Movant was denied Due Process of Law becase the failure of both counsel to challenge the Exparte Communications and bring to the Court's attention the conflicts of interest. The Movant was denied the right to be heard. The Movant was denied Due Process of Law because had the court inquired into the conflicts that were brought to its attention, the issue regarding the Exparte Communications and Counsel's reluctance and or refusal to raise the appropriate objections regarding them would have been brought out earlier. The fact that the court held Exparte meetings with the Government regarding the merits of the case and counsel did not object to it explemlifies that the Movant was denied the Effective assistance of Counsel and denied Due Process of Law. There are many cases that held that Exparte Communications between the Government or the Court and Government is reversible Error.[4]

---

[3] This is because had all the attorneys informed the trial court about their various conflicts, many of these issues would have been resolved prior to now. Conflicts such as the communication breakdowns, the reluctances to go to trial when the Movant wanted to, the duress of Movant, the duress which stemmed from the attorneys failure to get further psychological treatment before coercing him into pleading guilty. The conflicts which stemmed from Lead Counsel's views and opinions about people.

All of the foregoing errors affected the Movant's guilty plea because had he not been coerced by the conduct of counsel, and had he not been persuaded by the duressive tactic of the attorney, and had he not been tricked and pressured into pleading guilty by counsel, and had counsel informed him that because the government had illegal Exparte Communications with him, that all of the evidence and information obtained thereof, was rendered inadmissible under the WEATHERFORD, and MASSIAH Rule, he would not have pled guilty to the offenses that he did.[5]

In this entire proceeding, it was the Movant who was on his own and every which way his Trial Advocates, the Government and the Judges presiding over the case all denied him Due Process of the Law, and the constitutional protections rendered from the Due Process Clause of the 5th and 14th Amendments.

This matter was not raised on Direct Appeal because there existed a conflict as to whether the Movant's guilty plea waived his right to appeal. The Court

---

[4] "Once the right to counsel has attached and has been asserted, the State/Government must honor it, at the very least, the prosecutor and police have an affirmative obligation not to act in a manner that circumvents and dilutes the protection afforded by the Right to Counsel." See; MAINE V. MOULTON, 88 L. Ed. 2d 484 (1985). The Government's knowing exploitation of the opportunity to have Exparte contacts with the Movant and the attorney's failures to object to it as well as the Court's failure to appreciate that the Exparte contacts had occurred, constitutes a direct denial of the Sixth Amendment Right; Accord; MAINE v MOULTON, supra. Since the Right to Counsel had attached at the time of the Exparte contacts, this court may, among other remedies, dismiss the indictment, Accord; U.S. v. MORRISON, 602 F. 2d 533 (1979). Likewise, the court and the Government's participation in Exparte Communications with confidential information from the state prosecutors was improper and requires a remand, Accord; U.S. V. ALVERSON, 666 F.2d 341, 48 (1982) and U.S. V. REESE, 775 F. 2d 1077, 78 (1985) Since the Government illegally initiated the Exparte contacts rendered all of that invalid under MICHIGAN V. JACKSON, 106 S.Ct. at 1911. Also, counsel was ineffective for not objecting to or challenging it on these basis. The bottom line is that had counsel not been ineffective, none of this would have occurred and the conviction that the Movant now stands convicted of would not have been because as a result of Errors, the Indictment was due to be dismissed with prejudice. See; U.S. V. MORRISON, 602 F.2d 532, 33 (1979)

[5] Moreso, had the first and second Trial Judge inquired into the conflicts that were brought to their attention, the plea would not have been entered as well because with the aid and assistance of new counsel, the plea would not have been entered.

said he had a right to appeal. The Government said he did not. Counsel was asked to file an appeal and he did not. In fact, after sentencing was over, none of them ever visted or responded to letters sent to them regarding the filing of an appeal. The Movant respectfully requests in this Supplemental Claim that he be granted Collater\Relief from the violations that led to his plea, conviction and denial of the Due Process of Law.

### CONCLUSION

The Movant concludes this Supplemental claim by respectfully asserting that fundamental violations and infringments of his substantial constitutional rights have occurred. A total breakdown of the mechanisms put in place by the Constitution were either disregarded or completely stomped on by all the parties involved in this case. . .(i.e., from the Trial Advocates, the Judge, and the prosecution) whose Jobs, Duties, and Obligations are [solely] to see that Justice be sought and not avenged. This is a clear case that should not have been prosecuted as it was and should be used as a Blueprint to show others in the legal community from both the Advocates and the Prosecution's side, how not to represent a case. The Movant submits that he should be granted Relief from the types of egregious Errors that occurred herein[6]

### PRAYER

The Movant prays that the Relief requested be accordingly granted.

Respectfully Submitted

*Clarence Heatley*
Clarence Heatley #39015-054
P.O. Box 26030
Beaumont, Tx 77720

---

[6] Pursuant to Rule 8 Governing 28 U.S.C. 2255 proceedings, the Movant requests that he be granted an Evidentiary Hearing to resolve the issues that are in dispute and to develope a record on the issues raised in the 2255 Motion that would entitle him to Relief if proven.

## CLAIM 2.

<u>RICHARDSON'S CLAIM AND SUPPORTING DOCUMENTS</u> OF THE GOVERNMENT'S RESPONSE MARCH 21, 2002, TO PETITIONER'S 28 U.S.C. SECTION 2255 MOTION, AT PAGE (14)(FOOTNOTE 5) OF ITS "MEMORANDUM OF LAW, STATING THAT ("HEATLEY'S RELIANCE ON "<u>RICHARDSON V. UNITED STATES,</u> 526 U.S. 813 (1999)", AS A BASIS TO VACATE HIS CONVICTION ON THE "CCE" COUNTS IS MIS-PLACED.

### <u>ARGUMENT IN SUPPORT OF RICHARDSON'S CLAIM</u>

The petitioner argues that his conviction and guilty plea were invalid in light of "Richardson", because he was not informed by his two attorneys, Joel S. Cohen or David A. Ruhnke, nor by the government or the court that the individual predicate offenses comprising the "continuing <u>series</u> of violations in 21 U.S.C. Section 848(c)(2) were themselves sparated "<u>Elements</u> of the "<u>CCE</u>" offenses. See,"<u>Richardson</u>",(holding that each of the offenses in the"<u>series</u>" of violations referenced in 21 U.S.C. Section <u>848</u> is an element of the "<u>CCE</u>" offenses). The petitioner argues that(at no time during the proceeding in this case) did his attorneys or the court explained the nature of the offenses in sufficient detail to give the petitioner notice of what he is being asked to admit too, and nor did the court inform the petitioner during his "Plea Colloquy" that each of the counts in the indictment were themselves predicate offenses to establish the existence of the enterprise. See, **(PLEA COLLOQUY ON FEBRUARY 5, 1999)**, at page 22, of the "**TRANSCRIPT)**. Stating as follows:

<u>THE COURT:</u> Ms. McCarthy, could you give me a brief summary of what the government's evidence would be on count Forty-Six.

<u>MS. McCARTY:</u>Yes, your Honor. What I think--- if the court will allow me, I would like to first have Mr. Heatley allocute to the existence of the continued criminal enterprise, his activity as the leader of that group, as well as the Rico enterprise. And I think that after that, each allocution to each particular incident will follow more naturally.

The petitioner argues that before being allowed to allocute to the existence of the "CCE" the court "<u>must</u>" address him personally in open court under Rule 11(b) to establish that he understands the nature of the offenses. See, <u>United States V. Andrades, 169 F.3d 131,136 (2nd Cir. 1999)</u>. A review of his record, will show that he was not adequately advised and understood the nature of the charges against him. See, **(PLEA COLLOQUY TRANSCRIPT)** at page 23-Line 12.

"I would ask the Court to initially ask Mr. Heatley to allocute to the existence of the CCE.

**THE COURT:** Mr. Heatley, what is it that you did that makes you believe you are guilty of participating in a continuing criminal enterprise?

THE DEFENDANT: Excuse me, your Honor?

THE COURT: I'am asking you what is it that you did that makes you believe you are guilty of participating in a Continuing Criminal Enterprise.

THE DEFENDANT: I organized --- I just heard what the government said. I agree with that, Your Honor.(X)

The petitioner argues that during his plea colloquy his two attorneys and the Court allowed him to plea guilty to the numerous counts in the indictment without informing him that each of the counts were themselves predicate offenses to establish the existence of the enterprise.See, (PLEA COLLOQUY TRANSCRIPT) at page 24-Line 16.

THE COURT: Ms. McCarty, Mr. Ruknke, do you agree there is a sufficient factual predicate to establish the existence of the enterprise?

MS. McCARTY: Yes, Your Honor.

MR. RUHNKE: Yes, Your Honor.

THE COURT: I find that there is a sufficient factual predicate to establish the existence of the enterprise.

The petitioner argues that the record in this case is clare as to his two attorneys, the government and the Court's failure to inform him of the predicate offenses.See, in support "Bradshaw V. Stumpt, 545 U.S. 175,183,125 S.CT. 2398,162 L.ED 2d 143 (2005) (holding that where a defendant pleads guilty to a crime without having been informed of the crime's elements[the defendant lack 's 'sufficient awareness of the revevant circumstances and likely consequences ' of his decision] quoting "Brady v. United States, 397 U.S. 742-748, 90 S.CT. 1463, 25 L.ED 2d 747 (1970)(A plea of guilty is constitutionally valid only to the extent it is "Voluntary and "intelligent"). This Court has held that a plea does not qualify as intelligent unless a criminal defendant first receives "real notice of the true nature of the charge against him, which is the first and most universally recognized requirement of " Due Process.See, Smith v. O'Grady, 312 U.S. 329 -334, 61 S.CT. 572-574, 85 L.ED. 859 (1941).

### ACTUALLY /INNOCENCE

The petitioner argues that the United States Court of Appeals for the Second Circuit has held that "at least three drug felony violations are required to establish " the "Series" requirement of 21 U.S.C. Section 848. The petitioner argues that his allocution on February 5, 1999, did not satisfy the three-drug violations requirement for the "CCE", and that he never admitted to three drug felony; violations under Title 21, and the government never alleged nor established that the petitioner committed three predicate felonies drug violations 'constituting the series element of the CCE offenses, making him "Factually Innocent" of a "Continuing Criminal Enterprise" under Title 21.See, Bousley v. United States, 523 U.S. at 623. The petitioner in this case has a viable claim

iii.

of innocence and request that this Court adjudicate the merits of his claims and set aside the conviction and sentence or hold a evidentiary hearing to reach the merits of his ineffective assistance of counsel claim, as presented in his "Motion To Supplement, pursuant to his Section 2255 motion.

**WHEREFORE,** the petitioner " Prays" that his claims be **GRANTED** or a evidentiary hearing be set to reslove all issues that were not adjudicated pursuant to petitioner's section 2255 motion.

Dated this 24 day of November, 2015.

s/ Clarence Heatley
Clarence Heatley #39015-054

### CERTIFICATE OF SERVICE

I, Clarence Heatley, certify that on this 24 day of November, 2015, I mailed this Motion To Set Aside A "Void Judgment" to the United States District Court Clerk" and requested that the enclosed copy be serviced on the United States District Attorney's Office, by placing the same in the prison mailing system, postage pre-paid.

s? Clarence Heatley
Clarence Heatley #39015-054

From: Clarence Heatley
     Reg. No.#39015-054
     FCI-Talladega
     P.O. BOX 1000
     Talladega, AL. 35160

Criminal No. 96-CR-515
Civil No. 00-4313

RE: Motion To Set Aside A "Void Judgment"

**COVER LETTER**

Dear Clerk of Court:

    Enclosed is the original "Motion To Set Aside A "Viod Judgment" with a copy for the U.S. Attorney's Office, which is a party to this case. I'm requesting that you be so kind as to stamp-filed and return one copy for my records. I'm enclosing a self addressed envelope with postage pre-paid for a stamped copy. Your attention concerning this matter would be highly appreciated.

Dated this 24 day of November, 2015.

                                        Sincerely,
                                       s/ Clarence Heatley
                                     Clarence Heatley #39015-054

Clarence Heatley
Reg No. #39015-054
FCI - Talladega
P.O. Box 1000
Talladega, Al. 35160

USM P3 SDNY

⇦39015-054⇦
U S District Court
500 Pearl ST
S.Dist. of Ny-Attn Clerk
NEW YORK, NY 10007
United States

12/2/15
Criminal
Docketing

